Case number 19-5023 et al., Timothy C. Pigford et al. v. Sonny Perdue, Secretary, United States Department of Agriculture, Maurice McGinnis, by his conservator, Harrison Jones, appellate. Mr. Shorman for the appellate, Mr. Ross for the athlete. Good morning, Your Honours. My name is John Shorman. I am appearing on behalf of the conservator, Derek Jones, conservative for the estate of Maurice McGinnis. This court has some history in this case going back to the very beginnings. This is probably the last of the African-American discrimination, farmers discrimination cases left from the Track B process. But it started back in the 1990s when my client was involved in a situation where he filed for Track B, but it was mistakenly accepted. We're well aware of that. Yes, you are. So when the case was returned, we're now talking about 15 years later, there'd been a great deal of fatigue on Mr. McGinnis. Mr. McGinnis is a very independent gentleman, lives alone, farms property, has done so for many, many years. His closest family lives somewhere away, but they were intimately involved in this case, pushing this case and dealing with this case. As the case went back to Track B arbitration, there was immediately, it was set aside to discuss a settlement with the government, given the years and years of litigation. And the parties met and there was good faith, I think, on both sides initially to reach a settlement before the case was sent to even the court. I think in the limited time you have, you need to get to where the district court erred and why. Your Honor, the district court, over the course of these proceedings, there was a, Mr. McGinnis was unable to make rational decisions in terms of helping. Why didn't you say that to anyone then? Well, we did do that, Your Honor. It was discussed in the course of the arbitration many, many times. In fact, the arbitrator asked if he could speak to Mr. McGinnis directly without the presence of counsel. You didn't seek a stay or putting off of any of the deadlines? The stay, because of the nature of the consent decree, a stay was not tenable, Your Honor, because the only way we were going to get to whether proceeding, the arbitrator had no ability to, a guardian ad litem, had no ability to adjudicate a guardian ad litem in this case. That was discussed. It was not an ability that he had. The stay, he was not capable of entering a stay that would take it past the 150-day period. So what was the error by the district court? The district court should have allowed this case to go to monitor review. The monitor, at that time, the case had been a conservatorship entered by a state court in Mississippi. The monitor has the power under the consent decree to cure a miscarriage of justice, and that should have been allowed to go back to an arbitration with the conservator, and the conservator could have directed counsel to make the proper filings in this case. That would have allowed us to show by preponderance of evidence that, in fact, he was entitled to damages over and above the track fees. What prevented you from taking any discovery and presenting any evidence prior to the deadline's passing? We did take discovery, Your Honor. Discovery was taken in the case. Deposition was taken in the case. What prevented you from presenting any evidence before the deadline? My client would not permit it, Your Honor. My client would not permit it. I had to, in the record of your case, you'll see that on several occasions I had mentioned What's in the record is that your client would not permit the expert report. Right. And he would not permit. And what's also in the record, in terms of his direct case, all he would permit me to file was the monitor's report previously under the assumption that he was entitled to a $22 million award. He would not permit me to submit the direct evidence, which we could have taken out of his deposition, which we could have filed. He would not permit me to file the direct case. Where is that in the record? That I would not be permitted to file it? Yeah. Well, what was filed, I mean, obviously my communications with the client are protected by his privilege, and I couldn't waive that, but what's in the record is what we did file as a direct case. It's his monitor's report, and that's what I was instructed to do was to file the monitor's report. That's all I could do other than withdraw. And I felt at the end of the day withdrawing would have been unfair to this gentleman who I'd been representing all through that Track A, Track B litigation. Withdrawing was not the answer. The last chance we had really was to get the conservatorship in place, which is a state court proceeding, which Mr. Jones, who was also Mr. McGinnis' nephew and was involved in the discovery of the case, he's an attorney, but he had to ramp that up. The family had a great deal of difficulty in convincing Mr. McGinnis to get to the proper psychological evaluation that would allow a court in Mississippi to enter the conservatorship. The conservatorship proceeding wasn't open until 2017. That's correct, Your Honor. That's after all these deadlines had gone past. That's correct, Your Honor. That's when Mr. McGinnis consented to the psychological evaluation, which led to the entry of the conservatorship. Up until that point, he refused to do that adamantly. This gentleman, his stubbornness is admirable, but he could not be moved on this. He simply could not be moved, and I had no choice. I could not seek a guardian ad litem. I couldn't go to the trial court because of the limited jurisdiction under this consent decree. If conservatorship was actually in order, that presumes an incompetence on the part of the client. If you're making that presumption, then again, what the presiding judge asked you, why was this not initiated before these deadlines ran out? Because the conservatorship was entered by a state court in Mississippi, Your Honor, and the client had to be convinced to get to it. It wasn't an involuntary conservatorship. Is there an involuntary procedure in Mississippi? No. Well, the family did not choose to do that, Your Honor. I didn't have that apparent. I was working through the family. The family did not choose to do that. This gentleman, Mr. McGinnis, is more or less the patriarch of this family. He's a respected member of this family. I think there are emotional issues here. They could not. Because I would Mr. McGinnis didn't appear to me to be entirely out of his mind for an extended period of time. I would get articulate instructions from Mr. McGinnis, instructing me to and stating that that, without invading privilege, but stating that this information had discussions with Congress and everything else. I could not clearly state to myself that this man was incompetent other than the way he was not giving me any assistance. So I believed at the end of the day, rather than withdraw, the best we could do recognizing that the arbitrators' hands were tied by the fact he could not adjudicate a guardian ad litem, by the fact he was restricted by the terms of the consent decree, in terms of the timing he had to complete a hearing and issue an award, that the best shot we had was to get the conservatorship as soon as we could and move to the monitor who had a broader range from a miscarriage of justice. That's the reason. So the monitor, you believe, is not restricted to the record as it was before the arbitrator? I think the monitor would have, well, the monitor is restricted to the record, but the record indicates that we could not, I think the record would indicate, given the fact that we had discussions with the arbitrator and with the party on the other side, given the fact that the arbitrator proposed that he himself personally would speak to try and break this impasse, I think there was a possibility the monitor could have reviewed this and found that the fact that we now had a conservatorship, the fact that it was clearly irrational judgments were made by Mr. McGinnis, that the case should have gone back to Track B arbitration and finally be dealt with. Thank you, Your Honors. Thank you, Your Honors. May it please the Court, Case and Ross for the Department of Agriculture. As you are well aware, after this Court ordered Mr. McGinnis' claim be processed under Track B arbitration, he and his counsel failed to submit any timely evidence in support of that claim. And though that failure is now attributed to Mr. McGinnis' mental incapacity, at no point did his counsel raise that incapacity to the arbitrator. Because the arbitrator had no evidence in support of the claim, the claim was denied. And on a petition for monitor review, because the monitors would be limited to reviewing the record before the arbitrator, there was nothing for the monitor review. So the district court correctly dismissed that petition, and unfortunately that's the end of the road for this claim. What about the appellant's argument that the monitor would have discretion or authority to reopen the record to prevent a miscarriage of justice? Even if the record were reopened in this case, there was nothing in the record, Your Honor. So the monitor would have to effectively allow the arbitrator to review new evidence, which is not allowed by the order of reference or the consent decree. And so appellant requests relief that is not contemplated by the consent decree. It's possible that under Rule 60b-5 that the consent decree could be modified for equitable considerations. Of course, those arguments were not made to the district court, which the district court considered to respond to. So arguably any argument to that effect before this court is forfeited. But even in that event, there's no indication that the consent decree should be reformed at this point. As appellant himself conceded, this is effectively the last of the Pickford claimants. And so under Track B, thus he asked to be treated differently from roughly 20,000 other claimants whose claims were successfully processed and relief given of over $1 billion of relief. So just so that we're clear here, your argument is that even if he was not competent, and that's the reason why no evidence was presented, too bad. Is that basically your argument? Not necessarily, Your Honor. If his counsel had demonstrated to the arbitrator or raised that concern, the arbitrator had full authority to stay the deadlines, as was done in this case, to be able to permit settlement or extend the deadlines. The district court expressly delegated authority for the government at the party's consent to extend those deadlines. And the government consented at every turn in this case. There was an ex parte communication that the government consented to between the arbitrator and Mr. McGinnis. It's not clear that communication ever took place. But at every turn, the government consented to extending deadlines and permitting Mr. McGinnis to submit evidence at a later date. And that was simply never done. At some point, a claim must be dismissed for failure to prosecution, as is true in the federal courts as well. Unfortunately, that's where this claim lies. If there are no other questions, the government rests on its brief. All right. Thank you. I'll give you two minutes for rebuttal, Mr. Shorland. Thank you, Your Honor. As pointed out in the appellant's brief, there were 20,000 claimants in this case. This consent decree covered an enormous number of people. And as pointed out, there should have been some sort of provision in there for the incompetence. Well, there was a provision in there. And you could have asked to extend the deadlines, right? But we couldn't ask the judge. We couldn't ask the arbitrator for a guardian ad litem. You're not answering my question, sir. Well, we did ask for a stay, Your Honor. We asked for a stay to get the settlement proposal through. You could ask for a stay to extend the deadlines while you resolve the conservatorship, right? Yes, Your Honor. And you did, right? Not formally, Your Honor, but we had several conversations where all discussions were made. It did not appear to the parties, to me, or to anybody else, that Mr. McGinnis was going to change his position on this evidence. And there was no – I didn't have authority at that time to say Mr. McGinnis was going to seek a conservatorship. I didn't have authority for Mr. McGinnis to say that to the arbitrator or anybody else. I couldn't simply say, I'm going to try and convince this gentleman to seek a conservatorship so we can get a stay. I couldn't give the arbitrator any period of time that that stay would be good for. Why couldn't you do that, sir? Because I didn't have authority from my client to do that. I simply did not have authority from my client to say to the arbitrator that Mr. McGinnis will seek a conservatorship. I didn't have that authority. I represented lots of difficult clients in 10 years as a public defender, many of them with lots of mental illness and all sorts of incapacity. I didn't need their permission to tell the court that I think that there needs to be an evaluation here or I'm not comfortable going forward until my client and I can get on the same page where I feel like he can properly instruct and advise me. You don't need permission or clearance for that. That was done. Don't violate privilege by saying that. No, absolutely, I agree with you, Your Honor. And that was done with the arbitrator, but the difference in that situation is – Tell me in the record, show me in the record when that was done. This was not done in – this was done in the course of several pre-hearing conversations with the arbitrator and the other parties. This was no mystery to anybody. Each side knew completely that we'd reached an impasse in settlement, that I was not getting any cooperation from this client. And the situation – You never put any of this on the record? You never filed anything? We did – You never – you can't cite to me anything in the joint appendix? We can cite to the arbitrator's ruling itself, where he discusses the difficulties that we were facing with Mr. McGinnis. He discusses – the arbitrator himself discusses that, first of all, he – the impasse grew so great that he proposed speaking to Mr. McGinnis himself. He says repeatedly, Mr. McGinnis did not understand the proceedings. Mr. McGinnis had this idea that he was entitled to an enormous award. Mr. McGinnis could not be shaken in any way, shape, or form from that belief. Now, in your situation, Your Honor, when you went to a judge and said, I have concerns with my client's competency, and I've done that myself in the past, I had a judge who had the power to adjudicate a guardium ad litem. This arbitrator did not. So it was – so the best thing to do, in my opinion – my opinion was to move on and try and get that conservatorship and – And let all the deadlines pass. Well, Your Honor, the deadlines were passing because my client would not give me authority to file anything. And I couldn't file – I couldn't file for a guardium ad litemship. I couldn't seek any information. I had no – my hands were completely tied until a conservatorship was entered. All right. Thank you, Your Honor. I think we have the argument.
judges: Wilkins, Williams, Sentelle